UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>           Plaintiff,<br><br>   v.<br><br>MARTY LISH,<br><br>           Defendant. | Case No. CR-10-100-E-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendant's Motion to Suppress (Dkt. 17). The Court heard evidence on August 11, 2010, and took the motion under advisement. For the reasons expressed below, the Court will deny the motion.

## FACTUAL BACKGROUND

On April 1, 2010, at about 2:00 p.m., a confidential informant told Idaho State Police detectives that he had seen defendant Lish in possession of eight ounces of methamphetamine that he was supplying to another person who was selling it in Lish's presence. The informant had provided accurate and reliable information to these detectives on numerous occasions in the past.

The detectives determined that Lish was on felony probation. They contacted

Lish's probation officer, Rob Adams, who told them that Lish was attending counseling at Pacific Rim Counseling. The detectives then placed Lish under surveillance.

At about 6:00 p.m., the detectives saw Lish exit Pacific Rim Counseling and get into a red Ford Mustang. They followed him. At about 6:30 p.m., the detectives ran the plates and discovered that they were registered to Lish but to a different vehicle than the red Mustang.

The detectives watched as Lish met another person at a local park at which time that person got out of her car and into Lish's car. The two were then observed driving around the neighborhood for several minutes before returning to the other car, where the passenger got back into her own car and drove away.

During the next few hours, the detectives observed Lish driving to a number of different residences that were occupied by known drug users. When driving, Lish would change directions in what the detectives recognized as an attempt to throw off any surveillance. Based on the officers training and experience, all of this behavior was consistent with street level drug trafficking.

At about 11:20 p.m. that same evening, Officer Shutes pulled the red Mustang over at the request of the detectives. He told Lish he pulled him over for displaying a fictitious license plate. Officer Shutes was not aware that earlier that day – around noon – Lish had registered the red Mustang at the Bannock County Courthouse and that the County had authorized the transfer of those license plates to the Mustang.

Lish told Officer Shutes that he had just registered the car and properly transferred

the plates. Lish provided his driver's information and proof of registration to Officer Shutes. Officer Shutes told Lish to "hang tight for just a second, and we'll get you going." Officer Shutes then went back to his patrol car, and contacted Idaho State Police Detective Julie Donahue to advise her of the stop. Detective Donahue immediately contacted Lish's probation officer, Rob Adams, and advised him of what had been observed that evening. Probation Officer Adams contacted his supervisor to receive authorization to conduct a Probation Search of Lish's vehicle, and then contacted Officer Shutes, who had done a driver's check on Lish in the interim. Probation Officer Adams advised Officer Shutes that he was enroute to that location to conduct a Probation Search of Lish's vehicle, but that Officer Shutes should begin the search. These related conversations took a total of approximately fourteen minutes, during which time Lish remained in his vehicle.

During the search, a vinyl bag was found under the passenger's seat. Located inside the vinyl bag was a plastic bag containing marijuana, a black digital scale, and three small plastic bags each containing methamphetamine. Lish was then arrested for possession of methamphetamine with intent to distribute, and transported to the Bannock County Jail. At the Bannock County Jail, Lish was also found to be in possession of three additional bags of suspected methamphetamine.

## ANALYSIS

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

**Memorandum Decision & Order – page 3**

Generally, a search warrant is needed before police can conduct a search and/or seizure. However, the Fourth Amendment does not require a warrant to search a vehicle when the vehicle is readily mobile and the officers have probable cause to believe the vehicle contains evidence of illegal activity. *Carroll v. United States*, 267 U.S. 132, 160-62 (1925); *United States v. Davis*, 530 F.3d 1069, 1084 (9th Cir. 2008).

"Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Davis*, 530 F.3d at 1084. Information from a confidential informant may be a source of probable cause in obtaining a search warrant. *United States v. Curran*, 498 F.2d 30, 34 (9th Cir. 1974). In *Curran*, the Ninth Circuit explained that "[i]n the case of a tip from a confidential informant, the officer has probable cause adequate to obtain a warrant if the officer has information about specific facts leading to the conclusion about criminal behavior and he has reason to give credence to the informer's tip." *Id.* (Internal citations omitted.)[1]

Here, Detective Olsen testified that he has used the confidential informant on many occasions and his information has always been reliable. Moreover, the veracity of the confidential informant's information was corroborated by other information obtained by the officers in this case. First, on the evening of April 1, 2010, officers observed Lish

---

[1] Although the case at bar did not involve the use of a confidential informant to provide probable cause to obtain a search warrant, the same reasoning applies when officers use a confidential informant to form the basis of probable cause to conduct a search under one of the exceptions to the warrant requirement, including the *Carroll* doctrine.

**Memorandum Decision & Order – page 4**

meeting with another individual in a grocery store parking lot. The two then drove separate vehicles to a park, where the other individual got into Lish's car. The two drove around for approximately 2-3 minutes without making any stops and then returned to the park. The other individual then returned to her car, and the two left in their separate vehicles. Detective Olsen testified that, based on his training and experience, this type of behavior is consistent with a drug transaction.

Second, on that same evening, officers observed Lish frequenting several residences of individuals involved in drug use and/or trafficking. Lish stayed at each residence for only a brief period of time. At one location, he did not even turn off the engine of his car. Detective Olsen testified that, based on his training and experience, this too is a type of behavior consistent with drug trafficking.

Finally, officers surveilling Lish that evening observed him driving somewhat irrationally. For example, he did not take the most direct routes to his destinations and he crossed several lanes at one point to make a turn. Detective Olsen testified that, based on his training and experience, such driving is consistent with counter-surveillance techniques used by drug traffickers.

Under these circumstances, the Court finds that the officers had probable cause to pull Lish over and search him and his vehicle. Lish's vehicle was readily mobile because he was driving it throughout the evening and when the officer pulled him over. Thus, the *Carroll* doctrine is met in this case.

Moreover, it makes no difference that Officer Shutes, and not one of the

**Memorandum Decision & Order – page 5**

detectives, made the stop and conducted the search.  The Court may consider whether "an investigatory stop, search, or arrest complied with the Fourth Amendment by look[ing] to the collective knowledge of all the officers involved in the criminal investigation although all of the information known to the law enforcement officers involved in the investigation is not communicated to the officer who actually undertakes the challenged action." *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007) (Internal citations and quotations omitted.)  The Ninth Circuit has "been willing to aggregate the facts known to each of the officers involved at least when there has been communication among agents." *Id.* (Internal citations and quotations omitted.)  "At the same time, [the Ninth Circuit has] applied the collective knowledge doctrine regardless of whether [any] information [giving rise to probable cause] was actually communicated to" the officer conducting the stop, search, or arrest." *Id.* (Internal citations and quotations omitted.)  The requirement is limited to there being communication but not necessarily conveyance of actual information among officers.  *Id.* at 1033.  The purpose of communication is "simply to distinguish officers functioning as a team from officers acting as independent actors who merely happen to be investigating the same subject." *Id.* (Internal citations and quotations omitted.)

Here, the officers functioned as a team in their investigation of Lish.  Several members of the team surveilled Lish.  Detective Olsen, a member of that team, instructed Officer Shutes to conduct the traffic stop on Lish.  After conducting the traffic stop, Officer Shutes contacted Detective Donahue, the leader of the team, and asked her what

**Memorandum Decision & Order – page 6**

to do next. Detective Donahue contacted Probation Officer Adams, who, upon obtaining authority from his supervisor, called Officer Shutes and instructed him to conduct the search. Under this situation, the officers collectively had probable cause and the warrantless search of Lish and his vehicle was valid.

Alternatively, an investigatory traffic stop was justified because Officer Shutes had a reasonable suspicion that Lish had committed a crime. *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Reasonable suspicion exists if "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21.

Here, at the time Officer Shutes pulled Lish over, the officers knew that (1) a confidential informant had seen Lish trafficking methamphetamine; (2) Lish was visiting that evening numerous residences occupied by persons known to be involved with drugs; and (3) Lish was driving in a manner designed to lose police tails. Moreover, the officers believed that Lish's vehicle displayed a fictitious license plate. Although, it was ultimately determined that Lish had properly registered the plates earlier that day, an officer's correct understanding of the law, together with a good-faith error regarding the facts, can establish reasonable suspicion to initiate a traffic stop. *United States v. King*, 244 F.3d 736, 738–739 (9th Cir. 2001) (citing *United States v. Twilley*, 222 F.3d 1092, 1096 (9th Cir. 2000); see *United States v. Miguel*, 368 F.3d 1150, 1154 (9th Cir. 2004). These facts gave the police reasonable suspicion that Lish was committing a crime or that he had violated the terms of his probation, and justified a stop of his vehicle.

In turn, a search of the vehicle was proper because the Fourth Amendment allows officers to search the home of a probationer without a warrant upon reasonable suspicion of a probation violation. *United States v. Knights*, 534 U.S. 112 (2001); *United States v. Franklin*, 603 F.3d 652, 655-56 (9th Cir. 2010). In *Knight*, the Supreme Court held that a warrantless search of a probationer's residence is reasonable under the Fourth Amendment where it is authorized by a condition of his probation and supported by reasonable suspicion. *Knight*, 534 U.S. at 122. Knight's probation conditions indicated that he would submit to a search of his person, property, residence, vehicle and personal property. Lish had a very similar condition to his probation. His probation agreement states that he "shall consent to the search of his . . . person, residence, vehicle, personal property, and other property . . . ." (Plf. Ex. 3.) Thus, although the officers searched Lish's car, as opposed to the residence involved in *Knight*, the search was reasonable because searching his vehicle was a condition of his probation and the officers had a reasonable suspicion that he possessed illegal drugs.

However, a seizure that is initially justified can become unlawful if it is prolonged beyond the time reasonably required to complete that mission. *See Illinois v. Caballes*, 543 U.S. 405, 407 (2005). Probationers do not waive their Fourth Amendment rights by agreeing, as a condition of probation, to submit to searches at any time upon request by a law enforcement officer. *U.S. v. Scott*, 450 F.3d 863, 868 (9th Cir. 2006).

Lish argues that the duration of his stop was unreasonable. Fourteen minutes elapsed between the time Officer Shutes completed his questioning of Lish and the time

the search began.

A records check is an expected part of a traffic stop and does not constitute undue delay. *United States v. Mendez*, 476 F.3d 1077, 1079-80 (9th Cir. 2007). While the detectives had already ran the plates and checked Lish's probation status before having him pulled over, it was reasonable for them to take some time to determine if Lish's probation officer wanted to do a search of the vehicle, given Lish's suspicious conduct that evening. While Lish does not give up his Fourth Amendment rights simply by being on probation, *see Scott*, 450 F.3d at 868, a reasonable delay caused by the need to contact a probation officer is an expected part of a traffic stop for a probationer, just like the records check was under *Mendez*. The fourteen minute delay here was reasonable. Accordingly, the motion to suppress must be denied.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the motion to suppress (docket no. 17) is DENIED.



DATED: **August 12, 2010**

Honorable B. Lynn Winmill
Chief U. S. District Judge